**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | : | |
|---|---|---|
| **EDWARD DEAN PASS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | 5:07-CV-21 (CAR) |
| | : | |
| | : | |
| **VANESSA GRIFFETH,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

### *ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Plaintiff Edward Dean Pass, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging that Defendant Vanessa Griffeth was deliberately indifferent to his serious medical needs while he was an inmate and she was a nurse at Scott's State Prison, thereby violating his Eighth Amendment right to be protected from cruel and unusual punishment. Currently pending before the Court is Defendant's Motion for Summary Judgment [Doc. 64]. Plaintiff has responded to the Motion [Doc. 67]. For the reasons explained below, Defendant's Motion [Doc. 64] is **GRANTED**, and this case is hereby **DISMISSED**. Thus, all other pending Motions [Docs. 57 and 65] are hereby **DISMISSED as moot**.

Before proceeding to the background and legal issues presented in this summary judgment Motion, the Court notes that neither Defendant nor Plaintiff presented the Court with any legally admissible evidence in the form of depositions, affidavits, medical records, or other evidence to support their respective positions. Thus, the Court has evaluated this case within the framework of facts as submitted by Plaintiff.

Here, Plaintiff is the nonmoving party and thus has the burden of proof. The Court recognizes that Plaintiff's *pro se* pleadings must be liberally construed. See, e.g., Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Although the Court must show leniency to *pro se* litigants, it will not serve as de facto counsel or "rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998). Under the Rules, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule does not require the party seeking summary judgment to submit evidence *negating* the opposing party's claim, but instead to demonstrate (*"with or without supporting affidavits"*) that the Rule 56(c) standard is satisfied. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As explained below, even accepting Plaintiff's entire pleadings as true, the Court finds Plaintiff fails to satisfy Rule 56(c), and Defendants are entitled to summary judgment.

**BACKGROUND**

On June 19, 2006, while Plaintiff was an inmate at Scott's State Prison, he injured his right hand and went to "sick call." Plaintiff was seen by Defendant Griffeth, a licensed practical nurse (LPN), and explained to her that while trying to cut a buffer off, the switch got stuck, and the handle "whirled around" and struck the back of his hand. He explained that he thought his right hand was broken. Nurse Griffeth then examined Plaintiff's hand, telling him to move his

2

fingers. Although Plaintiff admits he could move his hand, it was with great difficulty that caused him much pain. Upon examination, Nurse Griffeth told Plaintiff that his hand was not broken. Plaintiff asked for an x-ray, but she refused, instead instructing Plaintiff to alternatively soak his hand in warm and cool water. She gave Plaintiff ibuprofen to take every four to six hours, and instructed him to return if the pain did not subside. Nurse Griffeth refused Plaintiff's requests to be examined by the Physician's Assistant ("PA").

After following Nurse Griffeth's instructions, Plaintiff states that his hand got visibly worse, swelling and turning black and blue. Thus, on June 26, 2006, seven days after first seeing Nurse Griffeth, Plaintiff filled out a "sick call slip" and saw Nurse Griffeth. She again examined Plaintiff's hand. When she asked Plaintiff to move his hand, Plaintiff again admits that he could move part of his hand, but he told her that he could not move his little finger. He states that there was obvious bruising and swelling, and he was in extreme pain. After examination of Plaintiff's hand, Nurse Griffeth again told Plaintiff that his hand was not broken. He says that for twenty minutes he "had to beg and plead with Nurse Griff[eth] to let him go get an x-ray of his hand." Nurse Griffeth finally agreed, and Plaintiff saw the PA that day.

Three days after seeing the PA, on June 29, 2006, Plaintiff was sent to receive x-rays which showed that Plaintiff's little finger on his right hand, the right fifth metacarpal bone, was fractured. A week later, Plaintiff was sent to Augusta State Medical Center. Plaintiff states that the doctors at Augusta State Medical told him that because of the long delay before getting him to the clinic for x-rays and treatment, they could not put a cast on his hand and told him his hand would be deformed for the rest of his life. The doctors advised him not to have surgery and that his hand could get worse. The doctors placed a "half splint" on his hand and told him to wear it for four to six weeks. Plaintiff followed these orders.

In view of the above, and upon his assertion that the aforementioned medical treatments were inadequate and unnecessarily delayed, Plaintiff filed the instant action. He initially filed

3

suit against Nurse Griffeth and four other Defendants: Georgia Medical College, Commissioner James Donald, Warden Ross Williams, and Deputy Warden Terry Seler. Based upon its frivolity review, the Court dismissed all Defendants except for Nurse Griffeth. Because no dispositive motions were filed, the case was set for trial with a pretrial conference scheduled for September 9, 2010. On August 12, 2010, a little over three weeks before the pretrial conference, Defendant untimely filed the instant Motion for Summary Judgment contending Plaintiff's claims fail as a matter of law because (1) Plaintiff's injury does not constitute a serious medical need, and (2) Nurse Griffeth did not act with deliberate indifference to Plaintiff's medical condition. At the pretrial conference, this Court informed Plaintiff it would consider the Motion and gave Plaintiff adequate time to file a response. Having received the response, the Motion is now ripe for review.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## DISCUSSION

In Estelle v. Gamble, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97 (1976). "To prevail on a deliberate indifference to serious medical need claim, Plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

To show a constitutional violation based on medical treatment, Plaintiff must first show an objectively serious medical need: a need that "if left unattended, poses a substantial risk of

5

serious harm" and is either (a) "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"; or (b) one where "a delay in treating the need worsens the condition." Id. at 1307. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002). Then Plaintiff must prove the Defendant acted with deliberate indifference to that need which requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003). Plaintiff must demonstrate that Defendant Griffeth's response to the medical need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). A showing of intentional, conscious, or callous indifference is required. See Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990).

Here, Plaintiff appears to assert two claims against Nurse Griffeth: (1) Her failure to immediately send him for x-rays and further evaluation when she first saw him on June 19, 2006, amounted to deliberate indifference; and (2) the delay in referring him to the PA amounted to deliberate indifference.

Failure to immediately send Plaintiff for further diagnosis and treatment

No reasonable jury could find that Defendant Griffeth's failure to immediately send Plaintiff for x-rays and further evaluation on June 19, 2006, resulted in a constitutional violation. First, the evidence does not demonstrate a serious medical need for further diagnosis and treatment. Defendant Griffeth evaluated and treated Plaintiff's finger injury and, based on her

6

evaluation, determined that his finger did not require further evaluation. Griffeth treated Plaintiff's injury with pain medication, instructed Plaintiff to soak his hand in warm and cool water, and told Plaintiff to return if the pain failed to subside. That she later referred Plaintiff to the PA who ordered x-rays or that Plaintiff felt he should have been referred to the PA earlier demonstrates only a difference of opinion about the treatment. See Adams, 61 F.3d at 1545 (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); Hamm v. Dekalb Co., 774 F.2d 1567, 1575 (11th Cir. 1986 ) (concluding that, where inmate regularly was examined and treated and the dispute centered on adequacy of treatment, no constitutional violation existed).

Second, even if the evidence were to demonstrate a serious medical need, Plaintiff fails to show Defendant was deliberately indifferent to that need. In order to show that Nurse Griffeth was deliberately indifferent to Plaintiff's need to immediately see the PA and have an x-ray, Plaintiff must show that Griffeth had the subjective impression that a substantial risk of harm existed. Here, there are no facts from which a reasonable jury could find that an inference could have been drawn by Nurse Griffeth that a substantial risk of serious harm existed to Plaintiff. On June 19, 2006, when Plaintiff first saw Nurse Griffeth, Plaintiff explained the injury and told her he thought his right hand was broken. Nurse Griffeth examined his hand and prescribed treatment. Plaintiff admits that although he complained of pain, he could move his fingers. No reasonable jury could find these facts establish an intentional, conscious, or callous indifference to Plaintiff's injury.

Third, even if these facts could give rise to an inference that a substantial risk of harm existed, no evidence exists that Nurse Griffeth drew on that inference. Instead, Nurse Griffeth took protective measures, instructing Plaintiff to soak his hand in water, giving him ibuprofen

7

for pain, and instructing him to return if the pain continued. When he did return, even if the facts were to establish that Plaintiff had to argue with Nurse Griffeth for twenty minutes before she referred him to the PA, the fact is she referred him for further evaluation by the PA, and the PA examined him that day. Thus, given her prompt response after the second visit and the remedial measures she prescribed, there is no evidence showing after she first saw Plaintiff, Nurse Griffeth believed there was a substantial risk of harm to Plaintiff and that she deliberately disregarded that risk.

At most, Nurse Griffeth acted negligently in response to Plaintiff's complaints. However, negligence cannot support a § 1983 deliberate indifference claim. See, e.g., Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).

Delay in Treatment

Plaintiff also claims that Defendant Griffeth's delay in referring him to the PA violated his constitutional rights. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Whether a delay in treatment was tolerable "depends on the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994).

For the same reasons expressed above, the Court finds the evidence does not demonstrate a serious medical need due to the alleged delay in treatment. Even if it did, however, no reasonable jury could find that the seven-day delay in referring Plaintiff to the PA to receive x-rays constituted deliberate indifference. "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a lay person

8

because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." Hill, 40 F.3d at 1187. Plaintiff's injury to his little finger was not life-threatening. Moreover, his condition was not so severe at the time he first presented to Nurse Griffeth as to make it apparent that his hand was broken and that any delay in referring Plaintiff to the PA would detrimentally exacerbate the problem. Indeed, upon the initial evaluation Plaintiff was able to move his fingers. Moreover, the evidence indicates that the delay in receiving further treatment was caused by Plaintiff, not Defendant. Defendant Griffeth instructed Plaintiff to return to "sick call" if the pain did not subside. That the Plaintiff waited seven days to return is not Defendant's fault. Plaintiff does not allege that Defendant refused to see him before he came back on June 26th.

The evidence shows, based on Plaintiff's own admissions, that he did, in fact, receive medical care, and though he may have been, and evidently was, displeased with the level of care or the quickness in which he received the care, that is not enough to establish a constitutional violation. A mere difference in medical opinion between medical personnel and the inmate as to the diagnosis or course of treatment is insufficient to support an Eighth Amendment deliberate indifference to medical needs claim. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Finally, while the seriousness of an inmate's medical needs, where he alleges delayed treatment, may be decided by reference to the *effect* of the delay in treatment, see Gaudreault v. Municipality of Salem, Mass., 923, F.2d 203, 208 (1st Cir. 1990), a plaintiff must submit some verifying evidence to establish that the delay in treatment had a detrimental effect. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence in the record* to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188 (emphasis added). Plaintiff has failed to place any verifying medical evidence in the record regarding any detrimental effect of the alleged delay in

medical treatment. Not only are Plaintiff's bare assertions that the doctors at Augusta State Medical told him the delay caused his hand to be deformed inadmissible hearsay, but, even if the Court could consider these assertions as evidence, they are insufficient to prove the alleged delay rose to a constitutional violation.

The facts, mainly established by Plaintiff's own admissions, clearly indicate that Defendant was not deliberately indifferent to Plaintiff's serious medical needs. Instead, they show Plaintiff promptly received medical treatment in accordance with constitutional standards. In response to the Defendant's Motion, Plaintiff provides nothing of substance to rebut the Defendant's showing or to support his contentions that the timing or quality of the medical treatment he received was inadequate.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. 64] is hereby **GRANTED** as to all claims over which the Court has original jurisdiction, and Plaintiff's state law claims are **DISMISSED without prejudice**.[1] As such, all other pending Motions in this case [Docs. 57 and 65] are hereby DISMISSED as moot.

**SO ORDERED** this day 24th of September, 2010.

                                    S/ C. Ashley Royal
                                    C. Ashley Royal
                                    United States District Judge

SSH

---

[1] Plaintiff also asserts a state law medical malpractice claim against Defendant. Having dismissed the claims over which this Court has original jurisdiction, the Court has evaluated the factors set out in 28 U.S.C. § 1367(c) and declines to exercise supplemental jurisdiction over Plaintiff's state law malpractice claims. See, e.g., McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1227 (11th Cir. 2002) (when a federal court has dismissed all federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining state law claims.).